# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| WANDA SMITH, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC, <br><br> Defendant. | Case No.: SACV 17-00629-CJC-AFM <br><br> **ORDER GRANTING UNOPPOSED MOTION TO LIFT STAY, DIRECT CLASS NOTICE, AND GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** [Dkt. 43] |

## I. INTRODUCTION & BACKGROUND

Plaintiff Wanda Smith brings this putative class action against Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian") on behalf of herself and all others similarly situated. (Dkt. 1 [Complaint].) She asserts that Defendant violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681e(b), by inaccurately reporting certain delinquent loan accounts associated with debt collector CashCall, Inc. Specifically, Plaintiff alleges that Defendant violated the FCRA by failing to use reasonable procedures to assure maximum possible accuracy of the information it included on consumers' reports.

Prior to initiating this action, Plaintiff's counsel filed the action *Demeta Reyes v. Experian Information Solutions, Inc.*, 8:16-cv-00563-SVW-AFM (C.D. Cal.) (the "*Reyes* action"), alleging that Experian violated the same provision of the FCRA by reporting delinquent loan accounts from CashCall's related entity Delbert Services, Corp. (Dkt. 43-1 [Motion, hereinafter "Mot."] at 3; Dkt. 43-3 [Declaration of Norman E. Siegel, hereinafter "Siegel Decl."] ¶ 2.) At the time she filed her Complaint, Plaintiff filed a notice of related actions, informing this Court of the *Reyes* action. (Dkt. 4.) After transfer of Plaintiff's case to the *Reyes* court was declined (Dkt. 10), Defendant filed its answer and affirmative defenses. (Dkt. 14.) Shortly after this Court entered its scheduling order, the *Reyes* court granted Experian's motion for summary judgment and entered judgment against Ms. Reyes, which was thereafter appealed. (Mot. at 5; Siegel Decl., ¶ 13.)

Defendant moved to stay this case pending the *Reyes* appeal, which the Court granted, holding that: "Because the facts of the Reyes case and the instant case are so similar, the Ninth Circuit's decision will be dispositive, or at least instructive, on the two central issues in this case: (1) whether the complained-of credit report was inaccurate under the Fair Credit Reporting Act, and (2) whether Experian's conduct was willful." (Dkt. 40 at 5; Siegel Decl., ¶ 14.)

On May 17, 2019, the Ninth Circuit issued an opinion reversing the grant of summary judgment in Experian's favor in the *Reyes* action. The Ninth Circuit held that Ms. Reyes raised genuine issues of material fact as to both inaccuracy and willfulness under the FCRA, which precluded a grant of summary judgment in Experian's favor. *See Reyes v. Experian Info. Sols., Inc.*, 773 F. App'x 882 (9th Cir. 2019).

On June 21, 2019, the parties filed a joint status report informing the Court of the *Reyes* decision, requesting a lift of the stay of proceedings, and proposing amended scheduling deadlines. (Dkt. 42.) While this Court did not immediately lift the stay, the parties were able to test the strength of the cases by proceeding to class certification and trial in the *Reyes* action. (Mot. at 6; Siegel Decl., ¶ 16.)

On October 1, 2019, the *Reyes* court issued an order granting Plaintiff's motion for class certification and certifying a class of loan borrowers whose consumer reports contained Delbert accounts after January 21, 2015. *See Reyes v. Experian Info. Sols., Inc.*, No. 8:16-cv-00563, 2019 WL 4854849 (C.D. Cal. Oct. 1, 2019). Thereafter, the parties reached a $24 million settlement to resolve the *Reyes* action on behalf of more than 56,000 class members. (Mot. at 7; Siegel Decl., ¶ 19.)

Following preliminary approval of the *Reyes* settlement, the parties agreed to engage the Hon. Jay C. Gandhi, a retired federal magistrate judge in this Court, to serve as the mediator in this matter. On May 20, 2020, the parties attended a mediation before Judge Gandhi and following a full day of negotiations, executed a binding term sheet. (Mot. at 7; Siegel Decl., ¶ 21.) Following the mediation, the parties entered into a settlement agreement. (Siegel Decl., ¶ 22; Dkt. 43-2 [Settlement Agreement and Release, hereinafter the "Settlement Agreement"].) The Settlement Agreement creates a common settlement fund of $5 million, with about 25% of that amount going to the attorneys and 75% to the class. Before the Court is Plaintiff's unopposed motion to lift

the stay, direct class notice, and grant preliminary approval of a proposed class action settlement in this action. For the following reasons, the motion is **GRANTED**.[1]

## II. ANALYSIS

To determine whether preliminary approval of the Settlement Agreement is appropriate, the Court reviews (1) the requirements for class certification, (2) the fairness of the proposed settlement, (3) the attorney fees and incentive awards requested, (4) the request for appointment of a settlement administrator, and (5) issues relating to notice of the proposed settlement.

### A. Class Certification Requirements

Under Rule 23(e)(1), as amended December 1, 2018, the Court must direct notice to the class of a class action settlement upon determining that notice is justified because the Court concludes it will likely be able to approve the settlement and certify the class for purposes of judgment on the settlement. When a plaintiff seeks conditional class certification for purposes of settlement, the Court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003).

Under Rule 23(a), the plaintiff must show the class is sufficiently numerous, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests. Under Rule 23(b), the plaintiff must show that the action falls within one of the three "types" of classes. Here, Plaintiff seeks certification pursuant to Rule 23(b)(3). Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for August 24, 2020 at 1:30 p.m. is hereby vacated and off calendar.

### 1. Rule 23(a) Requirements

#### a. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602-03 (C.D. Cal. 2015); *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473-74 (C.D. Cal. 2012). Here, numerosity is easily satisfied because Defendant's records show there are approximately 14,500 individuals in the proposed settlement class. (Mot. at 12; Siegel Decl., ¶ 22.)

#### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Rather, the plaintiff's claim must depend on a "common contention" that is capable of classwide resolution. *Id*. This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Here, every overriding issue in this litigation presents a common question that can be determined on a classwide basis, including: (1) whether class members' reports are "inaccurate" within the meaning of § 1681e(b); (2) whether Experian followed reasonable procedures to assure maximum possible accuracy as required by § 1681e(b); and (3) whether Experian's conduct was "willful" under § 1681n. Those questions are central to each class member's claims and their resolution will help determine, "in one

stroke," whether Defendant violated the law and if so, the amount of damages the class may obtain.

### c. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff's injury is premised on Experian allowing a delinquent loan account to inaccurately report after it was initially deleted from her credit file. Plaintiff is seeking to represent a class of individuals who experienced the same credit reporting error. Accordingly, Plaintiff's claims are "reasonably coextensive" with those of the class. *See Hanlon*, 150 F.3d at 1020; *see also Reyes*, 2019 WL 4854849, at *6 ("Because Plaintiff only seeks to represent a class of consumers whose credit reports contained this exact same "inaccuracy," the unnamed class members share an identical injury. Further, Plaintiff's claim is based on the same course of conduct by Defendant as the claims of the unnamed class members" satisfying typicality requirement).

### d. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This factor requires (1) a lack of conflicts of interest between the proposed class and the proposed representative plaintiff, and (2) representation by qualified and competent counsel that will prosecute the action vigorously on behalf of the class. *Staton*, 327 F.3d at 957. The concern in the context of a class action settlement is that there is no collusion between the defendant, class counsel, and class representatives to pursue their own interests at the expense of the interests of the class. *Id*. at 958 n.12.

There is no evidence of a conflict of interest between Plaintiff and the class. Plaintiff's claims are identical to those of the class, and she has every incentive to vigorously pursue those claims. Nor is there any evidence that Plaintiff's counsel will

not adequately represent or protect the interests of the class. Plaintiff's counsel, Norman E. Siegel and J. Austin Moore of Stueve Siegel Hanson LLP, have extensive experience litigating consumer class actions and relied on their experience litigating the *Reyes* action, including prevailing on an appeal in the Ninth Circuit and class certification, to negotiate a well-informed settlement on behalf of the settlement class. (*See* Siegel Decl., ¶¶ 33-46; Siegel Decl., Ex. 1.) Counsel have vigorously prosecuted these actions since 2016 and meet all the criteria to be appointed as interim class counsel pursuant to Rule 23(g)(3). *See, e.g., Reyes*, 2019 WL 4854849, at *7 ("As for Plaintiff's and counsel's willingness to vigorously prosecute this action on behalf of the class, the Court has no doubt. The Court knows only too well how actively this case has been litigated on both sides from its inception in 2016.").

### 2. Rule 23(b)(3) Requirements

In addition to the requirements of Rule 23(a), Plaintiff must satisfy the requirements of Rule 23(b)(3). Under Rule 23(b)(3), a plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members." Although the predominance requirement overlaps with Rule 23(a)(2)'s commonality requirement, it is a more demanding inquiry. *Hanlon*, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). The plaintiff must show that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Plaintiff has shown that questions common to the class predominate over any questions affecting only individual members. The central questions in this case are (1) whether Experian's reporting of the CashCall accounts after January 1, 2015 rendered consumers' reports inaccurate within the meaning of § 1681e(b); and (2) whether Experian's conduct was willful, entitling Plaintiff and the Class to statutory damages. The Ninth Circuit's opinion in *Reyes*—which was considered in the context of a largely

overlapping evidentiary record—held that a jury could find in the affirmative on both counts. Likewise, the *Reyes* court held that these questions could be addressed with common evidence at trial, providing detailed rationale for why common questions regarding accuracy, liability, and willfulness predominate over any individual issues. *See Reyes*, 2019 WL 4854849, at *7–9 (finding predominance prong of Rule 23(b)(3) satisfied). Give the similarities in case theories and evidence, the same conclusion is warranted here.

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts consider four nonexclusive factors in evaluating whether a class action is the superior method for adjudicating a plaintiff's claims: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class, (3) the desirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

The Court finds that proceeding as a class is superior to other methods of resolving the issues in this case. A class action may be superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). A class action may also be superior when "no realistic alternative" to a class action exists. *Id.* at 1234-35. In cases involving claims for statutory damages under the FCRA, "class members will have little interest in pursuing individual claims due to the small potential recovery, and class-wide resolution will save time and resources." *In re Toys "R" Us FACTA Litig.*, 300 F.R.D. 347, 364-65 (C.D. Cal. 2013) (collecting cases). Thus, "even if each class member were to bring a separate suit, the costs and fees of each separate action would exceed those of a class action. It is more efficient to adjudicate the claims as a class action rather than thousands of individual actions." *Ramirez v. Trans Union, LLC*,

301 F.R.D. 408, 424 (N.D. Cal. 2014). "This is all the truer in this case since Plaintiff's proposed class consists of [thousands of people] who all purport to assert the same claim based on the same theories and proof." *Reyes*, 2019 WL 4854849, at *9.

Here, given the common issues presented by all class members, adjudicating these claims on an individual basis for 14,500 individuals would be inefficient and unrealistic. Additionally, although the Court foresees no management problems from litigating this dispute as a class action, the Supreme Court has held that a district court "need not inquire whether the case, if tried, would present intractable management problems" in a "settlement-only class certification." *Amchem*, 521 U.S. at 620. Accordingly, the Court finds it will likely be able to conclude that Plaintiff's proposed Class is appropriate for certification under Rules 23(a) and 23(b)(3).

### B. Fairness of the Proposed Settlement

Plaintiff seeks preliminary approval of the Settlement Agreement. Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate." *Staton*, 327 F.3d at 959 (quoting *Hanlon*, 150 F.3d at 1026). To determine whether this standard is met, courts consider factors including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Id.* (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)). At the preliminary approval stage, a full "fairness hearing" is not required. In *re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Rather, the inquiry is whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.*

//

### 1. Class Member Compensation

Having reviewed the arms-length negotiation process and substantive terms of the Settlement Agreement, the Court finds no obvious deficiencies or grounds to doubt its fairness. *See id*. The parties reached a settlement with the benefit of a full evidentiary record developed in the related *Reyes* action and a full-day mediation before an experienced mediator. *See In re Heritage Bond Litig*., 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." (internal quotation and citations omitted)). Each class member will receive approximately $250 without having to submit a claim or take any affirmative action under the settlement, which is a meaningful recovery in the context of FCRA settlements. (Mot. at 22-23.) And there is no evidence of collusion during the parties' settlement negotiations. Indeed, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp*., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

The Settlement Agreement also presents a fair compromise in light of the risks and expense of continued litigation. Even though Ms. Reyes and her counsel were able to prevail on appeal and later class certification in the *Reyes* action, there was no guarantee this case would follow the same pattern. As Plaintiff's counsel acknowledged at the outset of this case, "any future rulings in the *Reyes* action are not necessarily relevant or dispositive in this case, especially to the extent they address the 'inaccuracy' at issue in Reyes, which is fundamentally different than the inaccuracy at issue here." (Dkt. 25 at 4-5.) Even if Plaintiff prevailed in certifying a class in this case, she still faced the task of proving liability on a classwide basis at trial, which is a time-consuming and risky proposition. Consequently, through related litigation dating back to 2016, the parties had a clear view of the strengths and weaknesses of their positions. Additionally, in advance of mediation, Defendant provided Plaintiff with information regarding the size and scope of the class. (Mot. at 7; Siegel Decl., ¶ 20.) Plaintiff's

counsel later conducted discovery on the class size, confirming it includes approximately 14,500 individuals. (Mot. at 7-8; Siegel Decl., ¶ 22.)

The $5 million settlement amount represents 34% of the realistic exposure in this case. (Mot. at 23.) In light of the significant hurdles to recovery if litigation were to continue, it appears that the Settlement Agreement reflects a fair result.

### 2. Attorney Fees

The Settlement Agreement also provides for $1,250,000 in attorneys' fees and up to $50,000 in costs and expenses, plus approximately $44,950 in notice and administration costs. This amount reflects about 25% of the $5 million settlement fund. The Ninth Circuit has referred to 25% of the settlement fund as a "benchmark" for a reasonable fee award. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (noting 25% is typical percentage for the fee award, which can then be adjusted upward or downward). Based on the evidence before it, the Court preliminarily approves the proposed attorney fees and costs.

### 3. Incentive Award

Plaintiff also seeks a $10,000 incentive award to compensate the class representative for her time and efforts on behalf of the class. Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit. *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Such awards "are fairly typical in class action cases" and are discretionary. *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis removed). Although they "typically range from $2,000.00 to $10,000.00 . . . [h]igher awards are sometimes given in cases involving much larger settlement amounts." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases). In the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable." *See id.*, 306 F.R.D. at 266.

Here, Plaintiff seeks a larger incentive award than what is typical. However, the Court preliminarily concludes that the amount is reasonable. Plaintiff has actively participated in these proceedings from the outset of litigation, including contacting counsel to assess the viability of her claim, gathering extensive documentation detailing her loan and credit history, regularly meeting with counsel for over three years while closely tracking the *Reyes* litigation, staying apprised of settlement negotiations, and reviewing and approving the terms of the Settlement Agreement on behalf of the class. (Mot. at 15; Siegel Decl., ¶ 32.) Other courts have found incentive awards equaling 0.2% of the settlement fund or more reasonable in class action cases spanning multiple years. *See, e.g., Syed v. M-I, LLC*, 2017 WL 3190341, at *9 (E.D. Cal. July 27, 2017) (approving incentive awards of $15,000 and $20,000 which equaled 0.2% and 0.3% of the gross settlement fund respectively).

### C. Settlement Administrator

Plaintiff asks the Court to appoint Angeion Group, LLC ("Angeion") as settlement administrator. The parties have jointly agreed to use Angeion as the settlement administrator. (Mot. at 7-8; Siegel Decl., ¶ 22.) Angeion appears to have extensive experience in administering consumer class action cases, including serving as the administrator in the identically-structured *Reyes* settlement. (*See id.*; Dkt. 43-4 [Declaration of Christian J. Clapp] ¶¶ 4-6 and Ex. A.) Accordingly, the Court appoints Angeion as Settlement Administrator.

### D. Notice of the Proposed Settlement

Finally, Plaintiff seeks approval of the proposed manner and form of the notice that will be sent to the class members. For Rule 23(b)(3) classes, courts "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court finds the proposed manner of notice is adequate.

Plaintiff proposes a notice protocol centering on direct mail. Following preliminary approval, Defendant will provide Angeion a list of class members within

three days and the approved class notice will be mailed within 21 days of Angeion's receipt. (Settlement Agreement, ¶ 46.) The form of notice also meets the requirements of Rule 23(c)(2)(B). Notice to class members must "clearly and concisely state, in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that the class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, the proposed notice provides clear information about the definition of the class, the nature of the action, a summary of the terms of the proposed settlement, the process for objecting to the settlement, and the consequences of inaction. (*See* Dkt. 43-2 Ex. 1.) The notice will also provide specific details regarding the date, time, and place of the final approval hearing and how to participate. (*See id.*)

### III.    CONCLUSION

For the foregoing reasons, the Court finds that it is likely to find the proposed settlement "fair, reasonable, and adequate" pursuant to Rule 23(e)(2) and that the prerequisites of Rules 23(a) and (b)(3) have been met. Accordingly, the Court lifts the stay of proceedings and **GRANTS** preliminary approval of the Settlement Agreement. The Court hereby **APPOINTS** Plaintiff Wanda Smith as Class Representative, Norman E. Siegel and J. Austin Moore and Interim Class Counsel pursuant to Rule 23(g)(3), and Angeion Group, LLC as Settlement Administrator. The Court also **APPROVES** the proposed notice and orders that it be disseminated to the class as provided in the Settlement Agreement. The Court **ADOPTS** the following scheduling deadlines:

//
//
//
//

| EVENT | TIMING |
|---|---|
| Deadline for Experian to disseminate CAFA notices to government officials pursuant to 28 U.S.C. § 1715(b) | July 30, 2020 |
| Deadline for Experian to provide Settlement Class List to Settlement Administrator pursuant to paragraph 46 of the Settlement Agreement | August 13, 2020 |
| Notice deadline | September 9, 2020 |
| Deadline to file Plaintiff's motion for attorneys' fees, expenses, and a service award payment | September 23, 2020 |
| Objection deadline | October 14, 2020 |
| Opt-out deadline | October 14, 2020 |
| Deadline to file Plaintiff's motion for final approval of settlement and responses to any timely submitted Class member objections | October 19, 2020 |
| Final approval hearing | November 9, 2020 at 1:30 PM |

IT IS SO ORDERED.

Dated: August 10, 2020

_____
Honorable Cormac J. Carney
United States District Court Judge