UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| WANDA SMITH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No.: SACV 17-00629-CJC(AFMx)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD [Dkt. 47] |

## I. INTRODUCTION & BACKGROUND

Plaintiff Wanda Smith brings this putative class action against Defendant Experian Information Solutions, Inc. ("Experian") on behalf of herself and all others similarly situated. (Dkt. 1 [Complaint].) She asserts that Defendant violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681e(b), by inaccurately reporting certain delinquent loan accounts associated with debt collector CashCall, Inc. Specifically,

1 Plaintiff alleges that Defendant violated the FCRA by failing to use reasonable procedures to assure maximum possible accuracy of the information it included on consumers' reports.

Prior to initiating this action, Plaintiff's counsel filed the action *Demeta Reyes v. Experian Information Solutions, Inc.*, 8:16-cv-00563-SVW-AFM (C.D. Cal.) (the "*Reyes* action"), alleging that Experian violated the same provision of the FCRA by reporting delinquent loan accounts from CashCall's related entity Delbert Services, Corp. (Dkt. 47-1 [Memorandum in Support of Motion for Final Approval, hereinafter "Mot."] at 3; Dkt. 47-2 [Declaration of Norman E. Siegel, hereinafter "Siegel Decl."] ¶ 2.) At the time she filed her Complaint, Plaintiff filed a notice of related actions, informing this Court of the *Reyes* action. (Dkt. 4.) After the Court declined transfer of Plaintiff's case to the *Reyes* court, (Dkt. 10), Defendant filed its answer and affirmative defenses, (Dkt. 14). Shortly after this Court entered its scheduling order, the *Reyes* court granted Experian's motion for summary judgment and entered judgment against Ms. Reyes, which was thereafter appealed. (Mot. at 5; Siegel Decl. ¶ 13.)

Defendant moved to stay this case pending the *Reyes* appeal, which the Court granted, holding that: "Because the facts of the Reyes case and the instant case are so similar, the Ninth Circuit's decision will be dispositive, or at least instructive, on the two central issues in this case: (1) whether the complained-of credit report was inaccurate under the Fair Credit Reporting Act, and (2) whether Experian's conduct was willful." (Dkt. 40 at 5; Siegel Decl. ¶ 14.)

On May 17, 2019, the Ninth Circuit issued an opinion reversing the grant of summary judgment in Experian's favor in the *Reyes* action. The Ninth Circuit held that Ms. Reyes raised genuine issues of material fact as to both inaccuracy and willfulness

under the FCRA, which precluded a grant of summary judgment in Experian's favor. *See Reyes v. Experian Info. Sols., Inc.*, 773 F. App'x 882 (9th Cir. 2019).

On June 21, 2019, the parties filed a joint status report informing the Court of the *Reyes* decision, requesting a lift of the stay of proceedings, and proposing amended scheduling deadlines. (Dkt. 42.) While this Court did not immediately lift the stay, the parties were able to test the strength of the cases by proceeding to class certification and trial in the *Reyes* action. (Mot. at 6; Siegel Decl. ¶ 16.)

On October 1, 2019, the *Reyes* court issued an order granting Plaintiff's motion for class certification and certifying a class of loan borrowers whose consumer reports contained Delbert accounts after January 21, 2015. *See Reyes v. Experian Info. Sols., Inc.*, No. 8:16-cv-00563, 2019 WL 4854849 (C.D. Cal. Oct. 1, 2019). Thereafter, the parties reached a $24 million settlement to resolve the *Reyes* action on behalf of more than 56,000 class members. (Mot. at 6; Siegel Decl. ¶ 17.)

Following preliminary approval of the *Reyes* settlement, the parties agreed to engage the Hon. Jay C. Gandhi, a retired federal magistrate judge in this Court, to serve as the mediator in this matter. On May 20, 2020, the parties attended a mediation before Judge Gandhi and following a full day of negotiations, executed a binding term sheet. (Mot. at 7–8; Siegel Decl. ¶ 21.) Following the mediation, the parties entered into a settlement agreement. (Dkt. 43-2 [Settlement Agreement and Release, hereinafter "Settlement Agreement"].) The Settlement Agreement creates a common settlement fund of $5 million, with about 25% of that amount going to the attorneys and 75% to the class.

The Court granted preliminary approval of the Settlement Agreement on August 10, 2020, and appointed Angeion Group, LLC ("Angeion") as settlement administrator. (Dkt. 44.) Angeion then mailed notices to 14,587 class members and set up a settlement

website, mailing address, and dedicated toll-free hotline. (Dkt. 47-3 [Declaration of Steven J. Giannotti [hereinafter, "Giannotti Decl."] ¶¶ 5–13.) Thereafter, Plaintiff's counsel filed a motion for attorneys' fees, expenses, and a service award payment. (Dkt. 45.) Now that the deadline to opt-out or object has passed, only one individual has opted out and no one has objected. (Giannotti Decl. ¶¶ 14–16.) Plaintiff now moves the court to grant final approval of the settlement and the requested attorney fees, costs, and incentive awards. (*See* Mot.) For the following reasons this motion is **GRANTED**.

## II. DISCUSSION

In assessing whether to grant final approval, the Court analyzes (1) the propriety of granting class certification for purposes of settlement, (2) the fairness of the settlement, and (3) the reasonableness of the fees, costs, and incentive award requested.

### A. Class Certification

A plaintiff seeking class certification must satisfy two sets of requirements under Federal Rule of Civil Procedure 23: (1) Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy, and (2) the requirement that the action fall within one of the three "types" of classes described in Rule 23(b)'s subsections. In this case, Plaintiff seeks certification under Rule 23(b)(3), which allows certification if a court "finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Court previously concluded that Plaintiff presented sufficient evidence to show that the proposed class satisfies the Rule 23(a) and (b)(3) requirements. (*See* Dkt. 44 at 3–8.) Having reviewed those requirements again, the Court adopts its prior

analysis regarding class certification and grants certification of the proposed class for purposes of settlement only.

### B. Fairness of the Settlement

The Court next evaluates the fairness of the settlement. Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), a settlement of class claims requires court approval. Fed. R. Civ. P. 23(e). This is because "[i]ncentives inhere in class-action settlement negotiations that can, unless checked through careful district court review of the resulting settlement, result in a decree in which the rights of class members, including the named plaintiffs, may not be given due regard by the negotiating parties." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (alterations and quotations omitted).

Courts must therefore "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citation omitted). In considering whether this standard is met, courts consider various factors, including "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Id.* (citation omitted). Having considered the *Staton* factors, the Court finds the Settlement Agreement fundamentally fair and reasonable.

//
//
//

### 1. Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

The strength of Plaintiff's case, when balanced against the risks and obstacles inherent in continued litigation, weighs in favor of granting final approval of the Settlement Agreement. The parties reached a settlement with the benefit of a full evidentiary record developed in the related *Reyes* action and a full-day mediation before an experienced mediator. The discovery conducted in the *Reyes* action, which included depositions of numerous key fact witnesses, two corporate representatives, and significant third-party discovery, was deemed produced in this case pursuant to a discovery-sharing agreement between the parties, (Dkt. 25), and provided the parties with sufficient information to make an informed decision. (Mot. at 4, 20–21; Siegel Decl. ¶¶ 10, 47.)

Additionally, in advance of mediation, Defendant provided Plaintiff with information regarding the size and scope of the class. (Mot. at 7; Siegel Decl. ¶ 20.) Plaintiff's counsel later conducted discovery on the class size, confirming it includes approximately 14,500 individuals. (Mot. at 8; Siegel Decl. ¶ 22.)

The Settlement Agreement presents a fair compromise in light of the risks and expense of continued litigation. Even though Ms. Reyes and her counsel were able to prevail on appeal and later class certification in the *Reyes* action, there was no guarantee this case would follow the same pattern. As Plaintiff's counsel acknowledged at the outset of this case, "any future rulings in the *Reyes* action are not necessarily relevant or dispositive in this case, especially to the extent they address the 'inaccuracy' at issue in Reyes, which is fundamentally different than the inaccuracy at issue here." (Dkt. 25 at 4–5.) Even if Plaintiff prevailed in certifying a class in this case, she still faced the task of proving liability on a classwide basis at trial, which is a time-consuming and risky

proposition. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041–42 (N.D. Cal. 2008) (discussing how a class action settlement offered an "immediate and certain award" in light of significant obstacles posed through continued litigation); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement."). Specifically, Plaintiff would be forwarding a novel and unproven basis for liability under the FCRA for Experian's failure to properly delete certain accounts that provided unverifiable data. (Mot at 16.) Moreover, the involvement of an experienced mediator following significant discovery, while not conclusive, is a helpful barometer for the Court because it indicates that the settlement agreement was non-collusive. *See Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). This factor weighs in favor of approving the settlement.

### 2. Amount Offered in Settlement

The Court also finds that the amount offered is fair and reasonable, especially in light of the preceding discussion regarding the risks, obstacles, and costs of further litigation. The $5 million settlement fund provides for automatic payments of more than $253 per class member, which is in the high end of FCRA settlements and constitutes a meaningful individual recovery. (Mot. at 18; Siegel Decl. ¶ 43.)

This is especially true given the risks associated with establishing Defendant's willful conduct, which is a prerequisite to obtaining statutory damages under the FCRA. Given the statutory range of between $100 and $1,000 for willful violations, a $5 million settlement fund on behalf of 14,587 class members constitutes 343% of the minimum $100 damages award and 34% of the maximum $1,000 recoverable at trial. (Mot. at 19; Siegel Decl. ¶ 44.)

Moreover, the amount offered in settlement provides an immediate and tangible benefit to the Class and eliminates the risk that they could receive less than that amount, or nothing at all, if the litigation continued. In the Court's view, the amount offered in settlement is reasonable. This factor weighs in favor of approving the settlement.

### 3. Extent of Discovery Completed, Stage of Proceedings, and Experience and Views of Counsel

Additionally, the parties here gathered enough information through substantial discovery and litigation to make an informed decision about whether the terms of this Settlement Agreement were fair. Indeed, this case settled only after Plaintiff's counsel overcame an adverse judgment in the *Reyes* action, which included a successful Ninth Circuit appeal and class certification motion. Plaintiff's counsel was also able to develop the separate facts related to the unique components of this case, putting them in a position to make educated choices regarding Plaintiff's approach to settlement. (Mot. at 20; Siegel Decl. ¶ 47.) Consequently, through related litigation dating back to 2016, the parties had a clear view of the strengths and weaknesses of their positions. Where the "parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approving the settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal citation and quotation marks omitted). Indeed, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 889 (C.D. Cal. 2016). Plaintiff's counsel are highly-experienced in consumer class actions and had sufficient information to negotiate a well-informed settlement on behalf of the settlement class.

In short, the Court is satisfied that the parties reached the Settlement Agreement after developing a full and fair understanding of the merits and risks of the case, and negotiating at arm's length. This factor weighs in favor of approving the settlement.

### 4. Reaction of Class Members

Following the Court's preliminary approval order, Angeion sent direct mail notice to all 14,500 plus class members. The deadline for class members to opt-out or object was October 14, 2020. Only one class member excluded herself from the settlement and no class members objected.[1] (Giannotti Decl., ¶¶ 14–16.) Accordingly, class members' reaction to the settlement has been overwhelmingly positive, which favors final approval. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (concluding that this factor supported conclusion that district court did not abuse its discretion in approving settlement where "[o]nly one of the 5,400 potential class members to whom notice of the proposed Settlement and Plan of Distribution was sent chose to opt-out of the class"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

After considering the *Staton* factors, the Court finds the Settlement Agreement fair, adequate, and reasonable.

//
//

---

[1] Linda Aubert, the individual listed in Exhibit B to the Settlement Administrator's declaration submitted with Plaintiff's motion for final approval of settlement, (Dkt. 47-3, Ex. B), has validly excluded herself from the Settlement Class and shall not be bound by the Settlement.

### 5. Rule 23(e)(2) Factors

The Court must also find the settlement "fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
  (i) the costs, risks, and delay of trial and appeal;
  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
  (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). There is substantial overlap between these factors and the *Staton* factors, so the Court does not repeat itself here. The Court has considered these factors and finds that the settlement is fair, reasonable, and adequate.

### C. Attorney Fees and Costs, and Plaintiff's Incentive Award

Plaintiff's counsel originally sought attorney fees of $1,250,000, equaling 25% of the $5,000,000 settlement fund. (Dkt. 45.) At the final approval stage, Plaintiff's counsel reduced their request to 25% of the settlement fund *after* deductions for counsel's and Angeion's costs. Accordingly, Plaintiff's counsel seek an attorney fee award of $1,235,490.29, costs and expenses in the amount of $13,088.83, Angeion's notice and

administration costs of $44,950, and a $10,000 incentive payment to the class representative. (Mot. at 21–22; Siegel Decl. ¶ 49.)

### 1. Attorney Fees and Costs

District courts have a duty to determine the fairness of attorney fees in a class action settlement. *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999). The Settlement Agreement provides that counsel's fees will be paid from the common settlement fund. When a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to calculate attorney fees. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011). The amount of fees awarded rests ultimately in the court's sound discretion. *Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986), *superseded by statute on other grounds*.

The Court applies the percentage-of-recovery method here. The Ninth Circuit has held that 25% of the fund is the "benchmark" for a reasonable fee award, and courts must provide adequate explanation in the record of any "special circumstances" to justify a departure from this benchmark. *In re Bluetooth*, 654 F.3d at 942–43; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent. That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case." (internal citation omitted)).

Plaintiff's counsel seek $1,275,000 in attorney fees—25% of the $5,000,000 settlement fund. The Court finds that a 25% award here after deductions for counsel's and Angeion's costs is both fair and reasonable in light of the results achieved, counsel's efforts in litigating this action, and the risks inherent in continued litigation. It is also

consistent with fee awards for common-fund cases in this district. *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897–98 (9th Cir. 2017) (affirming 25% benchmark fee award where "[t]here were no special circumstances [] indicating that the 25% benchmark award was either too small or too large"); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *5 (C.D. Cal. Oct. 24, 2017) (awarding 25% of a $7 million settlement fund).

Plaintiff's counsel also provide the Court with the information necessary to perform a "lodestar cross-check." Courts commonly perform a lodestar cross-check to assess the reasonableness of the percentage award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyer's investment of time in the litigation, provides a check on the reasonableness of the percentage award."); *see also In re Bluetooth*, 654 F.3d at 943 (encouraging a "comparison between the lodestar amount and a reasonable percentage award"). Specifically, Plaintiff's counsel state their lodestar fee at final approval is $324,975.50, which is based on their hours multiplied by their reasonable hourly rates which are commensurate with complex practitioners in the relevant legal market, resulting in a multiplier of 3.8. (Mot. at 22; Siegel Decl. ¶ 52.) They contend that although this case arose from the same common nucleus as facts as the *Reyes* action, there was a significant amount of independent work that went into investigating and prosecuting Ms. Smith's potential claim—which involved a legal theory that was conceptually distinct from *Reyes*. (Mot. at 23; Siegel Decl., ¶ 53.) Additionally, Plaintiff's counsel contend that they were only able to negotiate a settlement of this size because of their work performed prior and subsequent to filing this action, including the significant efforts undertaken in the *Reyes* action, which was not billed as part of this case, but which was necessary to secure the settlement result obtained. This included extensive discovery, substantive motion practice, a successful appeal, retention of an expert and expert discovery, hotly-contested class certification, and demonstration of counsel's willingness to take the case to trial.

(*Id.*)  Accordingly, Plaintiff's counsel contend that the 3.8 multiplier is reasonable for purposes of a cross-check where they took the case on a contingency at a time when the outcome was tenuous and achieved an excellent result. (*Id.*)

Though this multiplier is on the higher end, the Court agrees that it represents a reasonable fee under the circumstances of this case. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (affirming 25% fee recovery, which was supported by lodestar cross-check with a multiplier of 3.65, and explaining that that multiple "was within the range of multipliers applied in common fund cases"); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (affirming 20% fee recovery, which was supported by lodestar cross-check with multiplier of 3.66); *see also Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (awarding attorney fee equaling 25% of common fund, which was supported by lodestar cross-check with a multiplier of 5.2, noting that "there is ample authority for such awards resulting in multipliers in this range or higher.").

The Court finds counsel's request for $13,088.83 in litigation costs and $44,950 for Angeion's costs reasonable and well-supported by the evidence presented in their motion. Deducting these costs from the $5,000,000 settlement amount, and taking 25% of that amount, the Court awards Plaintiff's counsel $1,235,490.29 in attorney fees.

### 2. Plaintiff's Incentive Award

Counsel also seeks a $10,000 incentive award to compensate the class representative for her time and efforts on behalf of the class.  Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit. *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  Such awards "are fairly typical in class action cases" and are discretionary. *Rodriguez v. W. Pub.*

*Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis removed). Although they "typically range from $2,000.00 to $10,000.00 . . . [h]igher awards are sometimes given in cases involving much larger settlement amounts." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases). In the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable." *See id.* at 266.

Here, Plaintiff seeks a larger incentive award than what is typical. However, the Court confirms its preliminary conclusion that the amount is reasonable. As the Court previously recognized, "Plaintiff has actively participated in these proceedings from the outset of litigation, including contacting counsel to assess the viability of her claim, gathering extensive documentation detailing her loan and credit history, regularly meeting with counsel for over three years while closely tracking the *Reyes* litigation, staying apprised of settlement negotiations, and reviewing and approving the terms of the Settlement Agreement on behalf of the class. . . . Other courts have found incentive awards equaling 0.2% of the settlement fund or more reasonable in class action cases spanning multiple years. *See, e.g.*, *Syed v. M-I, LLC*, 2017 WL 3190341, at *9 (E.D. Cal. July 27, 2017) (approving incentive awards of $15,000 and $20,000 which equaled 0.2% and 0.3% of the gross settlement fund respectively)." (Dkt. 44 at 11.) Nothing has changed to alter the Court's preliminary finding that the requested incentive award is appropriate as there have been no objections to the proposed award and Ms. Smith will continue to represent the interests of the Settlement Class through final approval and settlement distribution. (Mot. at 24–25; Siegel Decl. ¶ 55.)

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for final approval of the Settlement Agreement is **GRANTED**. Plaintiff's counsel are awarded $1,235,490.29 in attorney

fees, $13,088.83 in costs, $44,950 for Angeion's notice and administration costs, and Plaintiff Wanda Smith is awarded $10,000 for her service as the class representative.

DATED: November 9, 2020

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

CC: FISCAL